**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|                       |     |                        |
|-----------------------|-----|------------------------|
| VERNON JONES,         | )   |                        |
|                       | )   |                        |
| Plaintiff,            | )   | Case No. 11 C 6374     |
|                       | )   |                        |
| v.                    | )   | Judge Marvin E. Aspen  |
|                       | )   |                        |
| UNITED AIRLINES,      | )   |                        |
|                       | )   |                        |
| Defendants.           | )   |                        |
|                       | )   |                        |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Court Judge:

Plaintiff Vernon Jones ("Plaintiff") filed suit against Defendant United Airlines ("Defendant"), alleging discrimination based on age in violation of the Age Discrimination Employment Act, 29 U.S.C. §§ 621–34, as well as race and national origin in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2 *et seq.*, and 42 U.S.C. § 1981. Presently before the court is Defendant's motion for summary judgment (Dkt. No. 22), Plaintiff's motion for summary judgment (Dkt. No. 26), Defendant's motion to strike Plaintiff's amended complaint (Dkt. No. 59), and Plaintiff's request for leave to amend (Dkt. No. 65). For the reasons stated below, we grant Defendant's motion for summary judgment and motion to strike, and deny Plaintiff's motion for summary judgment and request for leave to amend.

**BACKGROUND**

I.      **Plaintiff's Employment with Defendant**

Plaintiff began working as a flight attendant with Defendant United Airlines in 1995.

(Def. 56.1 Stat. ¶ 2.)  In 1996, he transferred to the position of international flight attendant,

based out of Narita Airport in Tokyo, Japan, where he remained until Defendant terminated his

employment on October 29, 2010.  (*Id.* ¶¶ 2, 60.)  In the years preceding Plaintiff's termination,

Defendant recorded a number of infractions and penalties on Plaintiff's disciplinary record.

These included a warning letter in July 2005 for his "poor dependability record," a ten-day

suspension in May 2006 for numerous violations of Defendant's Articles of Conduct, a 30-day

suspension in December 2007 for missing four scheduled trips, and a violation of Japanese

immigration laws in October 2008.  (*Id.* ¶¶ 21–24.)  This last infraction resulted in a "Level Four

warning, the highest level of discipline prior to discharge in United's progressive discipline

policy."  (*Id.* ¶ 24.)  On March 29, 2009, after receiving the Level Four warning, Plaintiff met

with his supervisors and his union president, Ricardo Gonzales, and agreed that any further

misconduct on his part for the next two-year period would result in the termination of his

employment.  (*Id.* ¶¶ 25–26.)

In February 2010, Plaintiff applied for a promotion to purser, or lead flight attendant.

(*Id.* ¶ 65.)  Defendant denied the promotion because Plaintiff was still in the two-year final

warning period.  (*Id.*)  Later that year, Defendant determined that Plaintiff had failed to properly

update his flight attendant operations manual ("FAOM"), as required by Defendant's policies

and FAA regulations.  (*Id.* ¶¶ 48–49, 53–56.)  As Plaintiff had already received a Level Four

warning, Defendant decided to terminate Plaintiff's employment at that time.  (*Id.* ¶¶ 58–60.)

## II.      Plaintiff's Claims against Defendant

In 2009, Plaintiff filed a charge against Defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant discriminated against him on the basis of race by cancelling his health insurance benefits while he was on a leave of absence. (*Id.* ¶ 63.)  On June 17, 2011, Plaintiff filed another charge with the EEOC, alleging that Defendant discriminated against him on the basis of race and national origin when it terminated his employment in 2010.  (Compl. at 8.)  He further claimed that Defendant terminated his employment in retaliation for his 2009 EEOC charge.  (*Id.*)  Plaintiff received a notice of his right to sue from the EEOC on June 24, 2011 and initiated the present suit.  (*Id.* at 7.)

In addition to the racial discrimination and retaliation claims in the underlying 2011 EEOC charge, the complaint alleged discrimination on the basis of age.  (*Id.* ¶ 9.)  Plaintiff also claims Defendant engaged in "obstruction of justice" with respect to a "felony hate crime."[1] (*Id.* ¶ 12(h).)  Finally, Plaintiff describes three incidents that took place in April 2011: (1) Plaintiff received a letter from the IRS that omitted an agent identifier, allegedly in violation of IRS policy;  (2) an Illinois State Police officer detained Plaintiff for three hours without charge while Plaintiff was standing in a picnic area; and (3) a hearing in another case between Plaintiff and Defendant was removed from the court's calendar.  (Compl. ¶ 13.)  Plaintiff attributes all three incidents to deliberate harassment on the part of Defendant.  (*Id.*)

---

[1] The complaint offers no details regarding the nature of the alleged hate crime.  In his first response to Defendant's motion for summary judgment, Plaintiff included an email describing an incident in which a United passenger was severely verbally abusive to Plaintiff and other United employees.  (Dkt. No. 45, Ex. A.)  We assume that this incident is the hate crime referred to in the complaint.

Discovery in this case closed on August 27, 2012, and both parties have filed for summary judgment. (Dkt. Nos. 22, 26, 54.) Additionally, Plaintiff filed an amended complaint, which Defendant has moved to strike. (Dkt. Nos. 58–59.) Following the motion to strike, Plaintiff filed a request for leave to amend the complaint. (Dkt. No. 65.)

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "must go beyond the pleadings" and identify portions of the record demonstrating that a material fact is genuinely disputed. *Id.*; Fed. R. Civ. P. 56(c). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

## ANALYSIS

**A.    Plaintiff's Motion for Summary Judgment**

On June 12, 2012, Plaintiff filed a motion asking for initial disclosures, summary judgment in favor of Plaintiff, an order compelling Defendant to answer discovery requests, and

a six month extension for discovery.  (Dkt. No. 26.)  The motion consisted entirely of document requests.  (*Id.*)  To the extent that we can construe this as a motion for summary judgment, we must deny it for failure to comply with Local Rule 56.1.

Local Rule 56.1 requires a party moving for summary judgment to submit "(1) any affidavits and other material referred to in Fed. R. Civ. P. 56(e), (2) a supporting memorandum of law, and (3) a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law."  L.R. 56.1(a)(3).  Plaintiff offered none of the required materials in support of his motion.  "Failure to comply with Local Rule 56.1 is grounds for denial . . ."  *Eva's Bridal Ltd. v. Halanick Enter., Inc.*, No. 07 C 1668, 2010 WL 2035720, at *5 (N.D. Ill. May 19, 2010); *see Jacobeit v. Rich Twp. High Sch. Dist. 227*, No. 09 C 1924, 2012 WL 1044509, at *2 (N.D. Ill. Mar. 28, 2012) ("A party moving for summary judgment cannot expect its motion to be granted if it fails in a significant respect to comply with the rules.").  Accordingly, we deny Plaintiff's motion for summary judgment.

**B.    Defendant's Motion for Summary Judgment**

On June 12, 2012, Defendant filed a motion for summary judgment, along with the required statement of undisputed facts.  (Dkt. No. 22, 26.)  Plaintiff filed a motion, which we granted, to stay briefing on summary judgment and extend discovery.  (Dkt. Nos. 26, 37.)  At that time, Plaintiff also filed an initial response to Defendant's motion for summary judgment. (Dkt. No. 45.)

After the close of discovery, Plaintiff filed two additional responses to Defendant's

motion for summary judgment. The second document, filed September 26, 2012, was captioned

both as a response to Defendant's motion for summary judgment and as an amended complaint.

(Dkt. No. 58.) In substance, however, Plaintiff merely resubmitted his original complaint with a

handful of additional details supplementing his factual allegations. *See, e.g., id.* ¶ 12 (adding

"Blocked Plaintiff from Purser Program 2010" to the allegation that the "Defendant failed to

promote the plaintiff."). He also attached a portion of his earlier response to Defendant's motion

for summary judgment (*id.* ¶ 13) and appended a handwritten account of the incident in which a

passenger treated Plaintiff and other flight attendants abusively (*id.*, Ex. A).

The third document, filed November 9, 2012, was captioned both as a response to

Defendant's motion for summary judgment and as a request for leave to file an amended

complaint. (Dkt. No. 65.) This document largely repeated the claims alleged in the complaint

and the first two responses, with some additional legal arguments.

      *A.*     *Plaintiff's Failure to Comply with Local Rule 56.1*

As an initial matter, we must accept as true Defendant's statement of undisputed facts,

because Plaintiff failed to comply with Local Rule 56.1 in his various responses. *Smith v. Lamz*,

321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the

nonmovant by the local rules results in an admission."); *Musupha v. Mineta*, 551 F. Supp. 2d

730, 737 (N.D. Ill. 2008) ("Where a proposed statement of fact is supported by the record and

not adequately rebutted, the court will accept that statement as true for purposes of summary

judgment."). Local Rule 56.1 requires a party opposing summary judgment to submit "a concise

response to the movant's statement" consisting of numbered paragraphs corresponding to each

numbered paragraph in the moving party's statement, including "specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1. The non-moving party must also submit a statement of "any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* Plaintiff's responses do not conform to the requirements of the rule, and therefore we deem Defendant's statement of undisputed facts as admitted for the purposes of this motion. *Smith*, 321 F.3d at 683.

The deficiency in Plaintiff's responses, however, is more serious than a failure to adhere to a particular format. The fundamental problem is that Plaintiff has neglected to point to any evidence whatsoever in support of his assertions. There is not a single citation to any part of the record in the three responses Plaintiff submitted. Indeed, it appears that Plaintiff misunderstands the nature of his burden at this stage. In his third response, Plaintiff urges us to "accept as true all well-pleaded facts alleged by the Plaintiff." (Dkt. No. 65 at 2.) This standard applies to a motion to dismiss, not a motion for summary judgment. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940–41 (2009).

Summary judgment is the stage at which "a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Here, Plaintiff's only reference to supporting evidence is a claim in his first response that "FOIA reports obtained by Plaintiff from FAA & OSHA confirm most of Plaintiff's allegations." (Dkt. No. 45 at 6.) In his third response, Plaintiff apparently asks us to accept his allegations as true because "the sensitive nature of potential witness's work would

require testimony or providing evidence (such as internal emails & phone records), which may be tangent [*sic.*] to confidential work/methods." Obviously, Plaintiff cannot survive a summary judgment motion by referring to evidence that he has not shown us or by offering unsubstantiated reasons why evidence cannot be obtained.

In the absence of any evidence, Plaintiff's responses amount to a series of bare assertions that Defendant is wrong. Standing alone, a party's unsupported assertions are insufficient to create a triable issue of fact. *Smith*, 321 F.3d at 683 ("[A] mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material."); *Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). Plaintiff asks us to construe his responses liberally to account for the fact that he is proceeding *pro se*. (Dkt. No. 65.) He is correct that a less stringent standard applies in his case, but "the essence of liberal construction is to give a *pro se* plaintiff a break . . . when he stumbles on a technicality[.]" *Greer v. Board of Educ. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001). Even the most liberal construction will not save a party who fails to present any evidence at the summary judgment stage.

This fundamental deficiency does not mean, however, that Defendant automatically prevails. Before we require anything of the non-moving party, the moving party must first meet its burden of showing those portions of the record "it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. We therefore

review Defendant's motion and supporting material to determine whether it has met its initial burden.

### B. Failure to Exhaust Administrative Remedies

Defendant correctly points out that Plaintiff did not raise an age discrimination claim in his underlying EEOC charge. (Mem. at 10.) A plaintiff may not bring claims under the ADEA without first presenting them to the EEOC. *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525 (7th Cir. 2008); *Powell v. Safer Found.*, No. 09 C 645, 2010 WL 4481780, at *2 (N.D. Ill. Nov. 1, 2010). This requirement ensures that "the employer has notice about the particular challenged conduct and provides an opportunity for settlement of the dispute." *Miller*, 525 F.3d at 525.

A plaintiff may nevertheless "proceed on a claim not explicitly mentioned in his EEOC charge if the claim is like or reasonably related to the EEOC charges, and the claim in the complaint reasonably could be expected to grow out of an EEOC investigation of the charge." *Id.* We apply a liberal standard in determining whether claims are reasonably related. *Id.* at 525–26. This court has held that "even a handful of words might be enough" to bring a claim within the scope of an EEOC charge. *Mirza v. The Neiman Marcus Group, Inc.*, No. 06 C 6484, 2009 WL 3824711, at *5 (N.D. Ill. Nov. 13, 2009).

In this case, however, Plaintiff's EEOC charge does not mention age at all. In its entirety, the charge alleges:

> I was hired by Respondant on May 7, 1995. I last worked as a Flight Attendant.
> During my employment, I filed a complaint of discrimination against Respondant
> (EEOC # 550-2009-02031.) I was discharged on October 29, 2010.
> I believe that I was discriminated against because of my national origin, American,
> my race, Black, and retaliated against for engaging in protected activity, in violation
> of Title VII of the Civil Rights Act of 1964, as amended.

(Compl. at 8 (attached EEOC charge).)  An EEOC investigation of age discrimination could not reasonably be expected to grow out of these bare allegations of racial discrimination and retaliation.  *See Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996) ("In general, we have held that retaliation and age discrimination claims are sufficiently dissimilar that an administrative charge of one fails to support a subsequent civil suit for the other."); *Powell*, 2010 WL 4481780 at *2 ("Simple allegations of discrimination in an EEOC charge are not a sufficient predicate for bringing any discrimination theory in federal court.").  Therefore we grant Defendant's motion for summary judgment with respect to the age discrimination claim for failure to exhaust administrative remedies.[2]

C.     *Termination of Plaintiff's Employment*

Plaintiff alleges that Defendant discriminated against him on the basis of race and national origin when it terminated his employment in October 2010.  (Compl. ¶¶ 9(d)–(e), 12(b).)  Plaintiff further alleges that Defendant terminated his employment in retaliation for filing an earlier EEOC complaint.  (Compl. ¶ 12(g).)  In order to prove his discrimination claim, Plaintiff may proceed under either the direct or indirect method.  *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006); *Masupha*, 551 F. Supp. 2d at 737.  The direct method "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Musapha*, 551 F. Supp. 2d at 737 (citing *Rogers v. City of Chi.*, 320 F.3d

---

[2] Defendant also points out that Plaintiff did not raise his failure to promote or harassment claims in the EEOC charge.  (Mem. at 13 nn.3–4.)  These claims do not fail on exhaustion grounds, however, because Plaintiff brought them under both Title VII and § 1981 (Compl. ¶ 9(d)–(e)), and § 1981 does not include an administrative exhaustion requirement.  *See Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007) ("Whether [the plaintiff] exhausted her Title VII claims is immaterial, however, because [she] also sued under § 1981, which does not require a plaintiff to bring an EEOC charge before filing a claim in federal court.").

-10-

748, 753 (7th Cir. 2003)).  Plaintiff has offered no such evidence in this case, so he must proceed with the indirect method.

Under the indirect approach, Plaintiff must first establish the four elements of a *prima facie* case: (1) he is a "member of a protected class;" (2) he was "performing at a level that met his employer's legitimate expectations;" (3) he was "subject to an adverse employment action;" and (4) he was "treated differently than a similarly situated person outside his protected classes." *Raymond*, 442 F.3d at 610 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).  If Plaintiff establishes a *prima facie* case, then the burden would shift to Defendant to "articulate some legitimate, nondiscriminatory reason" for Plaintiff's termination. *Id.*  If Defendant did so, then Plaintiff would have to show that the justification was pretextual. *Id.*

Defendant argues that Plaintiff fails to establish a *prima facie* case.  (Mem. at 7–8.)  First, Defendant points to Plaintiff's checkered disciplinary record, as well as Plaintiff's own testimony admitting that he was on a final disciplinary warning when he violated Defendant's Code of Conduct and FAA policies by working on a number of flights without an updated FAOM.  (Mem. at 8; Def. 56.1 Stat. ¶¶ 25–26.)  In fact, Plaintiff acknowledged that this violation was the reason he was fired.  (Def. 56.1 Stat. ¶ 61.)  Accordingly, it is undisputed that Plaintiff did not meet Defendant's legitimate expectations.

Second, Defendant cites to portions of Plaintiff's deposition in which he testifies that he is unaware of any other flight attendant who flew with an out-of-date FAOM.  (Mem. at 8; Def. 56.1 Stat. ¶ 62.)  In order to establish the fourth element of a *prima facie* case, Plaintiff must

identify a similarly situated employee who received more favorable treatment after engaging in similar conduct. *Musapha*, 551 F. Supp. 2d at 739 (granting summary judgment against a plaintiff who failed to "identify a single similarly situated employee in any position at the DOT was engaged in conduct similar to hers.") Therefore, Plaintiff's failure to identify another flight attendant who flew with an out-of-date FAOM is fatal to his claim.[3]

Plaintiff's retaliation claim fails for the same reasons. In order to prevail on a claim of retaliation, Plaintiff must "show that after he complained of discrimination, he, and not any other similarly situated employee who did not complain, was subject to an adverse action although he was performing up to the employer's legitimate job expectations." *Roney v. Ill. Dept. of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007). "Failure to satisfy any one element of the *prima facie* case is fatal to an employee's retaliation claim." *Id.* Thus, Plaintiff's inability to show that he was meeting his employer's legitimate expectations, or to identify any other similarly situated employee, prevents his claim from surviving a motion for summary judgment.

For these reasons, we grant Defendant's motion for summary judgment as to Plaintiff's discrimination and retaliation claims related to his termination from employment.

D.    *Failure to Promote*

Plaintiff alleges that Defendant discriminated against him when it failed to promote him to the position of purser in February 2010. (Compl. ¶12(c).) "To establish a *prima facie* case of race discrimination in a failure to promote context, the plaintiff must show: (1) she is a member of a protected group; (2) she was qualified for the position sought; (3) she was rejected for the

---

[3] In his third response, Plaintiff states that he "has demonstrated that Ms. G. Baxter was not terminated for not having a work/safety manual revision," but he does not cite to any evidentiary material in the record. (Dkt. No. 65 at 3.)

position; and (4) the employee promoted was not a member of the protected group and was not better qualified than the plaintiff." *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). Plaintiff's claim does not survive summary judgment because he has not shown that he was qualified for the position, or that a similarly qualified applicant was promoted to the position.

As Defendant points out, Plaintiff had already received the most severe disciplinary warning when he applied to be a purser, and "he was informed that he was not eligible [for the promotion] because he was on that Level Four warning." (Mem. at 14; Def. 56.1 Stat. ¶ 65.) Therefore he was not qualified for the position. Plaintiff further admits that he "is unaware of any person on a Level 4 warning who has been promoted to purser." (Mem. at 14; Def. 56.1 Stat. ¶ 66.) He therefore fails to establish the fourth element of a *prima facie* case. Accordingly, we grant Defendant's summary judgment motion with respect to those claims related to Defendant's decision not to promote plaintiff.

E.      *Harassment*

Plaintiff identifies three incidents that took place in April 2011, described above, which he attributes to harassment on the part of Defendant. (Compl. ¶ 13.) Even setting aside the fact that Plaintiff has not pointed to any evidence substantiating these assertions, there are two basic problems with this claim. First, Plaintiff has no evidence that Defendant played any part in causing the alleged harassment. (Mem. at 13; Def. 56.1 Stat. ¶ 68–70.) Second, the three incidents took place outside of the workplace, months after Defendant terminated Plaintiff's employment. (Compl. ¶ 13.)

"Title VII is violated 'when the *workplace* is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to *alter the conditions of the victim's employment* and create an abusive working environment." *Musupha*, 551 F. Supp. 2d at 742 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)) (emphasis added). Where, as in this case, the incidents complained of occur outside the employment context and outside the employer's control, there is no viable claim for harassment under Title VII. *See Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7th Cir. 2009) (finding that racist comments directed at the plaintiff at a Christmas party "happened too occasionally and outside the normal workday to rise to the level of a hostile work environment."). We therefore grant Defendant's motion for summary judgment with respect to the harassment claims.

F.      *Charges Related to Alleged Hate Crime*

There remains one claim that Defendant failed to address in its motion for summary judgment. Plaintiff alleges that Defendant engaged in a "cover-up" of a "felony hate crime," presumably in relation to an incident in August 2010 in which a passenger repeatedly subjected Plaintiff and other United employees to crude racial and sexual slurs. (Compl. ¶ 12.) The question is whether Plaintiff intended this claim to stand independently of his Title VII and § 1981 claims. The complaint is not clear. Plaintiff included these claims in the same paragraph as his other Title VII claims, but he stated that Defendant engaged in "obstruction of justice" and violated the Federal False Claims Act. (*Id.* ¶ 12.)

In *Spencer v. Thomas*, the plaintiff claimed that the defendant "obstructed justice in making false statements to the Department of Labor and the Office of Personnel Management to

-14-

prevent [the plaintiff] from receiving benefits." No. 01 C 7783, 2002 WL 31375499, at *4 (N.D. Ill. Oct. 21, 2002). The court held that "this is not a separate claim—it is simply a collection of allegations purporting to demonstrate Defendant's racial/retaliatory animus towards Plaintiff." *Id.* We reach the same conclusion here. It is more plausible to read these allegations as part of the harassment claim, both because of their context in the complaint and because they are not otherwise cognizable.

First, the Federal False Claims Act is entirely inapplicable to this situation, because its purpose is to deter fraud against the government, and a private party may only bring suits under this statute on behalf of the government. *See* 31 U.S.C. § 3729 *et seq.*; *Neal v. Honeywell, Inc.*, 826 F. Supp. 266, 268 (N.D. Ill. 1993). Second, obstruction of justice is a criminal offense—there is no civil cause of action for obstruction of justice in state tort law. *Panko v. United States*, No. 86 C 009, 1987 WL 11340, at * 1 (N.D. Ill. May 22, 1987). Neither is there any indication that Plaintiff intended to bring (or could have brought) an obstruction of justice claim under 42 U.S.C. § 1985, because there is no allegation that Defendant conspired to deprive Plaintiff of any constitutional right. *See Curtis v. Wilks*, 704 F. Supp. 2d 771, 785 (N.D. Ill. 2010) ("A plaintiff must establish a constitutional violation in order to recover" under § 1985). Therefore we read the allegations of a cover-up as part of Plaintiff's harassment claim under Title VII and § 1981.[4]

---

[4] Plaintiff's own testimony supports this reading. When asked how Defendant discriminated against him, Plaintiff responded, ". . . in my lawsuit pending before Judge Aspen it was by covering up an alleged multi-count felony hate crime and also by, as I allege, providing false and misleading information to the Illinois State Police. So I guess I would say I've been harassed by United Airlines, yes." (Tr. Dep. Vernon Jones 82:17–83:4 (April 24, 2012) (Dkt. No. 29-8)).

The reference to a "felony hate crime" in the complaint apparently refers to the incident described in the email attached to Plaintiff's first response. (Dkt. No. 45, Ex. A.) The email indicates that a passenger was severely verbally abusive to the crew on a United flight and to Plaintiff, who was on the flight as a passenger. (*Id.*) Plaintiff and the flight crew were unhappy with Defendant's subsequent response to the incident. (*Id.*)

The passenger's conduct was reprehensible, but a single incident is not sufficient to create a hostile working environment. *See Ford*, 587 F.3d at 847–48 (finding occasional comments insufficiently "severe or pervasive" to be actionable under Title VII). Even assuming Defendant's response to it was inadequate or inappropriate, this isolated incident is not the type of pervasive behavior that would alter the conditions of Plaintiff's employment. Therefore we grant Defendant's motion for summary judgment with respect to this part of Plaintiff's harassment claim.

## C.    Defendant's Motion to Strike and Plaintiff's Request for Leave to Amend

As noted above, Plaintiff's September 26, 2012 filing was captioned both as a response to Defendant's motion for summary judgment and as an amended complaint. (Dkt. No. 58.) Defendant moves to strike this filing insofar as we construe it as an amended complaint, based on Plaintiff's failure to seek leave under Federal Rule of Civil Procedure Rule 15(a). (Dkt. No. 59.) Rule 15(a) requires a party to ask leave of the court before amending a complaint more than 21 days after service of the original complaint or a responsive pleading. Fed. R. Civ. P. 15(a).

Plaintiff filed this amended complaint without asking leave of the court, over a year after service of the original complaint (Dkt. No. 1) and eleven months after the answer (Dkt. No. 9).

-16-

Plaintiff's failure to ask leave to amend is sufficient reason to grant Defendant's motion to strike. *See Vildaver v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 94 C 3041, 1996 WL 734957, at *3 (N.D. Ill. Dec. 19, 1996) (striking counts in a third amended complaint where "Plaintiffs have violated Rule 15(a) by amending their pleadings without leave of this court."); *Tarkowski v. County of Lake*, No. 84 C 3593, 1985 WL 2418, at *1 (N.D. Ill. Aug. 30, 1985) (granting a motion to strike an amended complaint after "finding that it was filed without leave of Court and that it in essence contains the same claims already ruled upon. . .").

Additionally, the Seventh Circuit has explicitly stated that "a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Anderson v. Donahoe*, No. 11 C 3784, 2012 WL 5275254, at *7 (7th Cir. Oct. 26, 2012); *see Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). To the extent that we can construe this document as a response to Defendant's motion for summary judgment, we may not allow Plaintiff to use it as a vehicle to amend his complaint. Therefore, we grant Defendant's motion to strike.

Apparently in response to Defendant's motion to strike, Plaintiff filed his third response to summary judgment, which was also captioned as a request for leave to amend. (Dkt. No. 65.) Under the present circumstances, we have ample reason to deny Plaintiff leave. "District courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011). In this case, amending after the close of discovery and briefing on motions for summary judgment,

over a year after filing the original complaint, qualifies as undue delay. *See id.* (affirming the district court's denial of a motion for leave to amend after discovery was closed and the defendant had moved for summary judgment); *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005) (affirming a district court's decision to deny leave to amend after it found that "delay and prejudice to [the plaintiff] would result if [the defendant] were permitted to amend its answer five months after its original answer and one month after discovery had closed.").

Moreover, because Plaintiff filed an amended complaint before asking leave of the court, we have the benefit of previewing exactly what amendments he intends to make. Reviewing them in light of our present disposition of the summary judgment motions, we hold that amendment would be futile. Nothing in the amended complaint suggests that Plaintiff could survive a dispositive motion even if we granted him leave. *See Rizzo v. City of Wheaton, Ill.*, 462 F. App'x 609, 613 (7th Cir. 2011) (upholding a district court decision that "amending the complaint would have been a futile gesture because the proposed new claims lacked merit"). We therefore deny Plaintiff request for leave to amend.

**CONCLUSION**

For the foregoing reasons, we grant Defendant's motion for summary judgment and

motion to strike.  We deny Plaintiff's motion for summary judgment and request for leave to

amend.  It is so ordered.

Honorable Marvin E. Aspen
U.S. District Court Judge

Date: December 13, 2012